UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THUAN KHUC, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>PENINSULAR INVESTMENTS, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-02898-BLF<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>[Re: ECF 53] |

Plaintiffs Thuan Khuc and Dr Burrito, Inc. (collectively, "Plaintiffs") bring this action arising out of a landlord-tenant dispute against Defendants Peninsular Investments, Inc., Lotus Hospitality, Inc., Ganendra Singh, and Sarmistha Patnaik (collectively, "Defendants"). Plaintiffs allege Defendants violated the Racketeer Influenced and Corrupt Organizations Act by "commit[ing] multiple related acts of coercing excessive rent payments and improperly subjecting Plaintiffs to the threat of eviction." *See, e.g.* Second Amended Complaint ("SAC") ¶ 88, ECF 52. Plaintiff Dr. Burrito also alleges the following violations of state law: breach of contract, breach of the covenant of good faith and fair dealing, and violation of the California Unfair Competition Law ("UCL"). SAC ¶¶ 96-112.

Previously, Defendants filed a motion to dismiss and a motion to strike Plaintiffs' FAC. ECF 23, 29. On March 25, 2016, the Court granted Defendants' motion to dismiss with leave to amend and deferred ruling on the motion to strike to allow Plaintiffs the opportunity to amend their complaint. Order, ECF 23; *see also Verizon Delaware, Inc. v. Covad Commc'n Co.*, 377

F.3d 1081, 1091 (9th Cir. 2004) (holding Fed. R. Civ. P. 15 requires allowing plaintiffs liberal leave to amend before granting an anti-SLAPP motion).  Plaintiffs filed a SAC, and Defendants filed another motion to strike the SAC pursuant to California's anti-SLAPP statute (Cal. Civ. P. § 425.16).  Mot., ECF 53.  For the reasons discussed below, the Court DENIES Defendants' motion.

## I. BACKGROUND

The following facts are pertinent to the pending motion.[1]  Plaintiff Khuc owns and operates iBagels Bakery & Café located at 266 E. Java Drive, Suite 2, Sunnyvale, CA.  SAC ¶ 4, ECF 52.  Plaintiff Khuc is also the President of Dr Burrito, Inc., which owns and operates a fast-food restaurant at 266 E. Java Drive, Suite 1, Sunnyvale, CA.  SAC ¶ 5.  Plaintiffs leased the premises for iBagels in 2007 and Dr Burrito in 2011.  SAC ¶¶ 4, 5.  Both leases were amended by subsequent addenda.  *Id*.

In 2014, Defendant Peninsular Investments, Inc. ("Peninsular") and Lotus Hospitality, Inc. ("Lotus") acquired ownership of the shopping center in which iBagels and Dr Burrito are located.  Defendant Ganendra Singh is the President of Peninsular and Lotus, SAC ¶ 9, and Defendant Sarmistha Patnaik is Mr. Singh's executive assistant, SAC ¶ 10.  Plaintiff Dr Burrito claims its lease and addendum capped its rent at $2,500 from May 15, 2013 to May 14, 2016.  SAC ¶ 12.  Pursuant to this lease, Dr Burrito paid a monthly rent of $2,500 to its former landlord Mike Aktar during the relevant period.  SAC ¶ 13.  After Defendants acquired Moffett Plaza, Dr Burrito claims Defendants raised the monthly rent to $3,400 in violation of the lease.  SAC ¶ 15.  Dr Burrito alleges that this conduct constitutes a breach to its lease and addendum, breach of the convent of good faith and fair dealing, and a violation of the UCL.

## II. LEGAL STANDARD

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them

---

[1] Since an anti-SLAPP motion "does not apply to federal causes of action," *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010), the Court's background section only discusses allegations relating to Dr Burrito's state law claims.

for doing so." *Makaeff v. Trump University, LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (internal quotation marks and citations omitted). Section 425.16 of the California Code of Civil Procedure, also referred to as the anti-SLAPP statute, provides in relevant part that:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. P. Code § 425.16(b)(1).

Resolution of an anti-SLAPP motion is a two-step process. *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 733 (2003). "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id*. (quoting *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). Second, "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id*. Under the second step, "the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, no reasonable jury could find for the plaintiff." *Makaeff*, 715 F.3d at 261 (internal quotation marks and citation omitted).

### III. DISCUSSION

#### A. Plaintiffs' State Law Claims Do Not Arise From Protected Activity

Defendants argue that the gravamen of Plaintiffs' SAC is Defendants' "contemplated unlawful detainer action." Mot. 8, ECF 53. By suing Defendants for an allegedly threatened eviction action, service of notices to cure and pay rent or quit, and related privileged communications, Defendants claim Plaintiffs' SAC violates the anti-SLAPP statute. *Id*. at 10.

Plaintiffs respond that Defendants are conflating the allegations in support of their RICO causes of action with the allegations in support of their state law claims. Opp. 10-20, ECF 54. Plaintiffs argue that Dr Burrito's state law claims are based on Defendants' unlawful raising of rent, which does not constitute protected activity under the anti-SLAPP statute. *Id*. at 12.

3

1   The Court agrees with Plaintiffs and finds that Dr Burrito's state law claims are not based
2   on protected activity.  In relevant part, the state law claims are as follows: (1) Dr Burrito's claim
3   for breach of contract alleges that "Defendants breached the Dr Burrito Lease Addendum when
4   they required Dr Burrito Inc. to pay an amount ($3,400.00) that exceeded the monthly rent due
5   ($2,500.00) under the Dr Burrito Lease Addendum, for the period Sept. 2014 through the present,"
6   SAC ¶ 99; Dr Burrito's claim for breach of the covenant of good faith and fair dealing alleges that
7   "Defendants acted in bad faith and wrongfully and intentionally interfered with Dr Burrito Inc.'s
8   right to receive the benefits of the contract, when they raised Dr Burrito's monthly rent from
9   $2,500.00 to $3,400.00," SAC ¶ 105; Dr Burrito's claim under the UCL alleges that "Defendants'
10  alleged wrongful business acts constituted, and constitute, a continuing course of conduct of unfair
11  competition; for the…Defendants have required Dr Burrito to pay monthly rent ($3,400.00) in
12  excess of the monthly rent due ($2,500.00) under the Dr Burrito Lease Addendum, for the period
13  Sept. 2014 through the present," SAC ¶ 111.  In these causes of action, "Defendants" refer only to
14  Defendant Peninsular and Defendant Lotus, SAC ¶¶ 97, 101, 108, and for each state law claim, Dr
15  Burrito specifically notes that only the "allegations of paragraphs 1 through 17, except for
16  paragraph 2, are incorporated by reference," SAC ¶¶ 96, 100, 107.  As Plaintiffs' pleading
17  indicates, Dr Burrito's state law actions are based on Defendants' alleged improper raising of rent
18  in violation of its lease.  Such actions do not constitute protected activity under the anti-SLAPP
19  statute.  *See, e.g., Oviedo v. Windsor Twelve Properties, LLC*, 212 Cal.App.4th 97, 110-111
20  (2012) (finding no authority supports the assertion that the landlord's "allegedly illegal raising of
21  appellant's rent is an act in furtherance of [its] rights of petition or free speech.").
22  Defendants' position that Plaintiffs' SAC violates the anti-SLAPP statute misconstrues the
23  nature of Dr Burrito's state law claims.  Instead of discussing the substance of the state law claims,
24  Defendants discuss the allegations supporting Plaintiffs' RICO claims.  But the anti-SLAPP
25  statute does not apply to federal claims.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir.
26  2010).  Recognizing this, Defendants attempt to use Plaintiffs' RICO allegations to attack the state
27  law claims under anti-SLAPP.  For example, Defendants argue that "[t]he fatal problem for
28  [Plaintiffs is] that that all of [their] allegations relate to [Defendants'] contemplated eviction

4

action, and attempts to collect rent that was due from [Plaintiffs] (*see, e.g.*, SAC, ¶¶ 2, 35 & 51), which is protected and absolutely privileged conduct." Reply 4, ECF 57.  What Defendants overlook is that the allegations they cite at paragraph 2, 35, and 51, are explicitly not being used to support Plaintiffs' state law causes of actions.  SAC ¶¶ 96, 100, 107.

Nor is the gravamen of any of Dr Burrito's state law claims Defendants' alleged scheme to evict Plaintiffs but rather, Dr Burrito's state claims reflect an ordinary breach of contract action typical of many landlord-tenant disputes.  Defendants argue that *Birkner v. Lam*, 156 Cal. App. 4th 275 (2007) and *Feldman v. 1100 Park Lane Assocs.*, 160 Cal. App. 4th 1467, 1479 (2008) support their position that the gravamen of this action arises from protected activity.  But in both those cases, the basis for liability for was the service of a lease termination notice or a three-day notice.  *Birkner*, 156 Cal.App.4th at 275; *Feldman*, 160 Cal.App.4th at 1467.  Here, Dr Burrito's state claims are not predicated on a lease termination notice or a three-day notice, but on Defendants' attempt to change its rent allegedly in violation of its lease.  As a result, Dr Burrito's state law claims do not arise from Defendants' protected petitioning activities.

### B. Plaintiffs Have Shown a Probability of Prevailing on their State Law Claims

If a defendant has not shown the alleged conduct arises from protected activity, courts are not required to proceed to the second step of the anti-SLAPP analysis.  *See, e.g., Ben-Shahar v. Pickart*, 231 Cal.App.4th 1043, 1054 (2014).  For completeness, the Court discusses whether Dr Burrito has shown a probability of prevailing on its state law claims.

Defendants argue that Plaintiffs have not shown a probability of prevailing on any of their claims.  Mot. 10-20. The bulk of Defendants' motion discusses the merits of Plaintiffs' RICO action, *id*. at 10-19, but for purposes of this discussion, the Court is analyzing only Dr Burrito's state law claims and thus, does not address Defendants' argument regarding the RICO claims.  Defendants argue that Dr Burrito has not properly alleged a claim for breach of contract because it has not set out, verbatim, the material terms of the contract or attached a copy of that contract.  *Id*. at 19.  However, Defendants attached the lease and argue that after reviewing the lease, Dr Burrito's interpretation of the lease agreement would improperly read out provisions of the contract for common-area maintenance ("CAM") charges, which the contracts specifically define

1  as 'additional rent.' *Id*. at 20.  Under that provision, Defendants argue their rent increase was

2  proper. *Id*.

3    Plaintiffs counter that the Dr Burrito lease stated the initial monthly rent would be $2,250

4  per month and that there would be an additional charge of $750 for CAM fees, insurance and taxes

5  but that an addendum to the lease set "actual rent" at $2,500.  Khuc Decl. ¶ 9, ECF 54-1.  As a

6  result, Dr Burrito argues that its rent was $2,500 during the relevant period. *Id*. at ¶¶ 10-11.

7  Moreover, Dr Burrito argues that to the extent the contract is ambiguous, course of conduct

8  evidence shows that its rent was $2,500.  Opp. 21, ECF 54.  According to Dr Burrito, before

9  Defendants bought the property, it paid the former landlord $2,500 per month.  Khuc Decl. ¶ 16,

10 ECF 54-1

11   The Court finds Plaintiffs have shown a probability of prevailing on their state law claims

12 for two reasons.  First, Dr Burrito makes a plausible argument that the addendum by setting

13 "actual rent" at $2,500 capped its rent at that amount.  Khuc Decl. ¶¶ 9-10, ECF 54-1.  The

14 contract defines "rent" as "*all* monetary obligations of Tenant to Landlord under the terms of this

15 agreement except the security deposit."  Exh. 2 at 3, ECF 53-1 (emphasis added).  Under the

16 paragraph describing CAM expenses, the contract says "Tenant shall pay to Landlord, as

17 additional rent, a share of [CAM] Costs." *Id*. at 4.  In the addendum, the contract states that

18 "actual rent at the said premises shall be [$2,500.00] cap." *Id*. at 13.  One could reasonably read

19 the addendum as limiting "actual rent" to a total of $2,500. The contract does not define the term

20 "actual rent" but "rent" is defined as all monetary obligations due to the Landlords.  As a result,

21 one could read the contract and addendum as limiting the total money due to Landlords to no more

22 than $2,500.  Although Landlords argue that the contract explains CAM is "additional rent," the

23 definition of rent may subsume "additional rent" because rent is defined as *all* monetary

24 obligations due to Defendants.  Thus, the contract, as Dr Burrito argues, may cap rent at $2,500.

25 Second, even if the contract is ambiguous, Dr Burrito's course of conduct performance indicates

26 that it and its prior landlord understood the contract to limit rent to $2,500.  As a result, based on

27 the contract and addendum, and subsequent conduct, Dr Burrito has shown a probability of

28 prevailing on its state law claims.  Despite this finding, the Court emphasizes that the record

United States District Court
Northern District of California

before the Court is limited and thus, it was not able to conduct a full analysis of Dr Burrito's contract claims. The fact that Dr Burrito has shown a probability of prevailing does not mean Dr Burrito will ultimately succeed on its state law claims.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motion to strike is DENIED.

**IT IS SO ORDERED.**

Dated: July 20, 2016

_____
BETH LABSON FREEMAN
United States District Judge